[Cite as *State v. Grad*, 2016-Ohio-8388.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

KENNETH A. GRAD

    Appellant

C.A. No.    15CA0014-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    08CR0272

DECISION AND JOURNAL ENTRY

Dated: December 27, 2016

---

HENSAL, Judge.

**{¶1}** Kenneth Grad appeals a judgment of the Medina County Court of Common Pleas that convicted and sentenced him for endangering children and felonious assault. For the following reasons, this Court affirms.

I.

**{¶2}** When W.G. was 41 days old, his parents, Kenneth and Laura Grad, took him to a podiatrist because one of his feet appeared swollen. When the podiatrist examined W.G., he quickly realized that W.G.'s injuries far exceeded anything that he would be able to handle in his office. He, therefore, persuaded the Grads to take W.G. to a hospital immediately. At Akron Children's Hospital, an x-ray revealed that the tibia in W.G.'s left leg was fractured. It also revealed that W.G. had had other fractures that were in various stages of healing. Additional x-rays of W.G.'s body revealed a total of 26 fractures, including fractures of W.G.'s fingers, arms,

legs, ribs, and skull.  The type of fractures suggested that some had been caused by twisting and others by squeezing.  Doctors also discovered a laceration on W.G.'s scrotum.

{¶3}  When interviewed about the injuries, the only trauma the Grads disclosed was one time when Mr. Grad accidentally bumped W.G.'s head into a dresser.  Doctors sent W.G.'s blood for genetic testing to determine whether he has osteogenesis imperfecta, but the results came back negative.  W.G.'s pediatrician also tested him for hypermobility after Mrs. Grad reported that she had the condition, but he determined that W.G. did not have hypermobility.

{¶4}  The Grand Jury indicted Mr. Grad on five counts of endangering children and three counts of felonious assault.  A jury found him guilty of the offenses, and the trial court sentenced him to a total of 24 years imprisonment.  Mr. Grad has appealed, assigning four errors.

II.

ASSIGNMENT OF ERROR I

DEFENSE COUNSEL WAS INEFFECTIVE.

{¶5}  Mr. Grad argues that his trial counsel were ineffective because they failed to present any expert medical testimony on his behalf.  He notes that the State called experts who testified about the reasons that W.G.'s injuries must have been caused by abuse.  Although his counsel obtained reports from several doctors and had some of them available to call at trial, they ended up not calling any of them.  According to Mr. Grad, in a case that was so heavily dependent on expert medical testimony, it was objectively unreasonable for his counsel not to call any experts on his behalf.  He also argues that there is a reasonable probability that the outcome of his trial would have been different if his trial counsel had presented their expert witnesses.

{¶6} To prevail on a claim of ineffective assistance of counsel, Mr. Grad must show: (1) that counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 100 (1955). In addition, to establish prejudice, Mr. Grad must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Id*. at 694.

{¶7} "[T]he failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Nicholas*, 66 Ohio St.3d 431, 436 (1993); *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 244. Instead, "[t]he decision whether to call an expert witness is solely a matter of trial strategy." *State v. Anderson*, 9th Dist. Summit No. 21431, 2003-Ohio-3315, ¶ 22.

{¶8} Through cross-examination, Mr. Grad's counsel got the State's expert witnesses to concede that there were additional tests that could have been done to further investigate whether W.G. had an underlying bone disorder that made his bones fracture under normal handling. Although the doctors offered explanations for why they had not done further testing, Mr. Grad's counsel emphasized their inaction during closing argument. Mr. Grad's counsel

characterized the investigation into W.G.'s injuries and the State's prosecution as "insincer[e][,]" questioning why, if they had never seen a child of W.G.'s age with so many broken bones, would they not investigate every possible explanation. Mr. Grad's counsel argued that the state medical experts had implied, outrageously, that Mr. Grad tried to gag W.G. and castrate him. Mr. Grad's counsel also pointed to the fact that W.G.'s pediatrician initially diagnosed the injury to W.G.'s scrotum as impetigo. Noting that the State's doctors had accepted that the fractures in W.G.'s skull were likely caused by accidental trauma, Mr. Grad's counsel argued that it was evidence that W.G.'s bones could fracture under normal handling. Finally, counsel argued that the State's experts were not consistent enough in their testimony to establish beyond a reasonable doubt that Mr. Grad abused his son.

{¶9} In light of the fact that Mr. Grad's counsel sought expert medical opinions that challenged the State's experts and had them available to testify at trial, the fact that they did not call those witnesses must be interpreted as trial strategy. Upon review of the record, we cannot say that Mr. Grad's counsel's strategy was objectively unreasonable under the circumstances. We, therefore, conclude that Mr. Grad has failed to demonstrate ineffective assistance of counsel. Mr. Grad's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> MR. GRAD'S FELONIOUS-ASSAULT CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} Mr. Grad argues that his conviction for count six of the indictment, which was one of the felonious assault offenses, was not supported by sufficient evidence and is against the manifest weight of the evidence. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶11} If, on the other hand, a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d 380, at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶12} Mr. Grad notes that the bill of particulars he received from the State indicates that the felonious assault charge in count six was based on the State's allegation that he caused a "fracture of the skull" to W.G. At trial, however, the State did not present any evidence that W.G.'s skull fractures were anything other than accidental. Mr. Grad, therefore, argues that there was no basis for his conviction on count six.

{¶13} Although the State may have indicated in the bill of particulars that count six was based on the injuries to W.G.'s skull, it argued at trial that count six related to the laceration of W.G.'s scrotum.[1] During closing argument, the State argued that the child endangering and felonious assault offenses that formed the basis of counts one and two related to the broken bones that W.G. suffered between May 26, 2008, and June 4, 2008. The State argued that counts three and four, which also charged endangering children and felonious assault, were for the broken bones W.G. suffered between June 6, 2008, and June 17, 2008. It argued that counts five and six, which were also endangering children and felonious assault charges, related to the laceration of W.G.'s scrotum that occurred between June 1, 2008, and June 4, 2008. Finally, it argued that counts seven and eight, which were endangering-children offenses, stemmed from Mr. Grad's failure to seek medical attention for W.G. after he suffered broken bones, one for the May 26 to June 4 time period and the other for the June 6 to June 17 time period.

{¶14} Count six alleged that, "on or about June 1, 2008, through June 4, 2008[,] * * * [Mr. Grad] unlawfully did knowingly cause serious physical harm to 'W.G.', in violation of Section 2903.11(A)(1) of the Ohio Revised Code * * *." Under Section 2901.01(A)(5), the definition of "[s]erious physical harm" includes "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement" and "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(d), (e).

{¶15} In his brief, Mr. Grad has only developed a sufficiency and manifest-weight argument regarding the injuries to W.G.'s skull. He has not argued that there is insufficient

---

[1] Mr. Grad has not argued in his appellate brief that he did not receive adequate notice of the charges against him or that the State impermissibly changed the basis of count six.

evidence in the record to support a finding that he knowingly lacerated W.G.'s scrotum or that the jury's finding that he caused such an injury to W.G.'s scrotum was against the manifest weight of the evidence. It is not the duty of this Court to develop an argument for Mr. Grad. *State v. Cain*, 9th Dist. Summit No. 27785, 2016-Ohio-7460, ¶ 53. Accordingly, based on the limited argument developed in Mr. Grad's appellate brief, we conclude that he had failed to establish that his conviction for count six is not supported by sufficient evidence or was against the manifest weight of the evidence. Mr. Grad's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT VIOLATED MR. GRAD'S SIXTH AMENDMENT RIGHT TO A JURY TRIAL WHEN IT CONSIDERED FACTS IN A PRESENTENCE INVESTIGATION REPORT DURING ITS ALLIED-OFFENSES ANALYSIS.

{¶16} Mr. Grad argues that the trial court incorrectly considered information from the pre-sentence investigation report when it determined whether his offenses were subject to merger under Section 2941.25. According to Mr. Grad, because any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt, the court incorrectly considered the facts in the pre-sentence investigation report. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

{¶17} Revised Code Section 2941.25 "is the primary indication of the General Assembly's intent to prohibit or allow multiple punishments for two or more offenses resulting from the same conduct" and is "an attempt to codify the judicial doctrine of merger[.]" *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 11. It provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶18} Mr. Grad did not argue in his sentencing memorandum or at the sentencing hearing that it would violate his Sixth Amendment rights for the trial court to consider the pre-sentence investigation when it determined whether his convictions were allied offenses. This Court has held that, if a defendant fails to raise a constitutional argument at the trial level, he forfeits the right to argue it to this Court. *State v. Davis*, 9th Dist. Lorain No. 14CA010639, 2015-Ohio-4218, ¶ 23. Although a defendant who has forfeited a constitutional argument may still argue plain error on appeal, Mr. Grad has not developed a plain error argument in his appellate brief. *See id*. This Court will not create a plain-error argument on his behalf.[2] *Id*. Mr. Grad's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT FAILED TO MERGE ALLIED OFFENSES OF SIMILAR IMPORT AND THUS IMPOSED MORE PRISON TERMS THAN AUTHORIZED BY LAW.

{¶19} Mr. Grad also argues that the trial court mistakenly concluded that his endangering-children and felonious-assault offenses in each time period are not allied. According to Mr. Grad, all of the offenses related to the injuries that W.G. suffered between May 26, 2008, and June 4, 2008, should merge into one offense as should all of the offenses that arise out of the injuries W.G. suffered between June 6, 2008, and June 17, 2008.

---

[2] Mr. Grad does argue plain error in his reply brief. This Court, however, will not consider plain-error arguments that are made for the first time in a reply brief. *State v. Strehl*, 9th Dist. Medina No. 10CA0063-M, 2012-Ohio-119, ¶ 18.

{¶20}    As previously noted, whether convictions merge is controlled by Section 2941.25.   In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Ohio Supreme Court interpreted Section 2941.25(B), explaining:

> Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true:  (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

*Id*. at paragraph three of the syllabus.  It also explained that offenses are of dissimilar import under Section 2941.25(B) if they involved "separate victims or if the harm that results from each offense is separate and identifiable."  *Id*. at paragraph two of the syllabus.

{¶21}  It is a defendant's burden to demonstrate that he is entitled to have two offenses merge.  *State v. Choate*, 9th Dist. Summit No. 27612, 2015-Ohio-4972, ¶ 19.  "To do so, the defendant must show that the State relied upon the same conduct to support both offenses."  *Id*. We review the trial court's determination of whether a defendant's offenses merge de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1.

{¶22}  According to Mr. Grad, because doctors were unable to determine whether W.G.'s fractures happened at different times or all at the same time, this Court should conclude that they were all caused by the same conduct.  He also argues that there was no evidence that the laceration to W.G.'s scrotum occurred at a different time than the fractures.

{¶23}  In finding that Mr. Grad feloniously assaulted W.G. under Section 2903.11(A)(1), the jury found that Mr. Grad knowingly caused serious physical harm to W.G.  In finding him guilty of endangering children under Section 2919.22(B)(1), it found that he "[a]buse[d]" W.G. Although the term "abuse" is not defined by the Revised Code, the jury reasonably concluded

that causing bone fractures and lacerations constituted abuse. The issue is whether the injuries happened at the same time or at different times.

{¶24} In his brief, Mr. Grad acknowledges that count one, endangering children, and count two, felonious assault, which occurred between May 26 and June 4, were based on fractures to W.G.'s clavicles, humerus, ribs, feet, femur, and tibia. Dr. Todd Ritzman testified that, in regard to W.G.'s broken tibia, the bone had been fractured on three different occasions. He explained that the fractures must have occurred at different times because each of them was in a different stage of healing. Dr. Ritzman's testimony, therefore, supports the conclusion that the fractures W.G. suffered between May 26 and June 4 did not occur at the same time. Because the fractures that occurred at one time period could form the basis of count one and those that occurred at a different time could serve as the basis for count two, we conclude that the trial court did not err when it determined that those counts were of dissimilar import.

{¶25} Mr. Grad acknowledges in his brief that count three, endangering children, and count four, felonious assault, occurred between June 6 and June 17 and arose from the fractures W.G. had to his phalanges, left forearm, wrist, and skull. Dr. Ritzman testified that there were two fractures to W.G.'s left ulna, both at a different stage of healing, which indicated that they occurred at two different times. Because counts three and four, therefore, could correspond to injuries that occurred at different times, we conclude that the trial court did not err when it determined that counts three and four were of dissimilar import.

{¶26} Regarding the laceration to W.G.'s scrotum, Mr. Grad argues that count five, endangering children, should merge with counts one and two because it occurred between June 1 and June 4, which overlaps with the time period for those counts. As previously noted, however, Dr. Ritzman testified that, between May 26 and June 4, W.G. was injured on at least three

separate occasions. The Ohio Supreme Court has explained that, when considering whether offenses are allied, courts must base their decisions on the entire record, not only on what the State argued at trial. *Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, at ¶ 24. Because the evidence in the record supports a finding that Mr. Grad injured W.G. on three separate occasions between May 26 and June 4, we cannot say that the trial court erred when it determined that Mr. Grad could be sentenced separately on counts one, two, and five. Mr. Grad's fourth assignment of error is overruled.

## III.

**{¶27}** Mr. Grad's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

MOORE, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

NIKKI TRAUTMAN BASZYNSKI, Assistant State Public Defender, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.